UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- ------------------------------------------------------- x

CESAR LUCIEN, ON BEHALF OF
HIMSELF AND ALL OTHER
PERSONS SIMILARLY SITUATED,

              Plaintiffs,

              v.

HNI CORPORATION; HON COMPANY;
DESIGN PUBLIC GROUP & ALLSTEEL
INC.

              Defendant

- ------------------------------------------------------- x

ECF CASE

No.: 1:25-cv-06744

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

INTRODUCTION

1.      Plaintiff, Cesar Lucien, on behalf of himself and all other persons similarly situated, asserts the following claims against Defendant, HNI CORPORATION; HON COMPANY; DESIGN PUBLIC GROUP & ALLSTEEL INC. as follows.

2.      Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

3.      In a September 25, 2018, letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with

the ADA's title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[1]

4.    Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually-impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually-impaired persons live in the State of New York.

5.    **Defendants HON Company, Allsteel Inc., and Design Public Group** are subsidiaries of **HNI Corporation**, a publicly traded conglomerate specializing in workplace furnishings and residential building products. Each Defendant operates a commercial website offering furniture and design products to consumers nationwide, including within this District. As digital retailers and service providers, these entities are subject to Title III of the Americans with Disabilities Act and are required to ensure that their websites are fully accessible to individuals with disabilities. Despite this obligation, Defendants have maintained websites that contain significant barriers to access for blind and visually impaired users, including but not limited to missing alternative text, unlabeled form fields, and inaccessible navigation menus.

6.    Plaintiff brings this civil rights action against parent company HNI Corporation whose Website, www.hnicorp.com and its subsidiaries, HON Company, (www.hon.com) Design Public Group (www.designpublicgroup.com) & Allsteel Inc. (www.allsteeloffice.com) (collectively, "Defendants"), for their failure to design, construct, maintain, and operate their interactive websites in a manner that is fully accessible to and independently usable by blind and visually impaired individuals, including Plaintiff. Defendants' denial of full and equal access to their websites—and by extension, the products and services offered therein—constitutes a

---

[1] *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018) (available at https://images.cutimes.com/contrib/content/uploads/documents/413/152136/adaletter.pdf) (last accessed July 13, 2020).

violation of Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

7.     Because Defendant's interactive websites including all portions thereof or accessed thereon (collectively, the "Website") or "Defendant's not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

8.     "When Congress enacted the ADA in 1990, it intended for the ADA to keep pace with the rapidly changing technology of our times. Since 1996, the Department of Justice has consistently taken the position that the ADA applies to web content. "Inaccessible web content means that people with disabilities are denied equal access to information. An inaccessible website can exclude people just as much as steps at an entrance to a physical location. Ensuring web accessibility for people with disabilities is a priority for the Department of Justice. In recent years, a multitude of services have moved online, and people rely on websites like never before for all aspects of daily living." A website with inaccessible features can limit the ability of people with disabilities to access a public accommodation's goods, services, and privileges available through that website.[2] "For people with disabilities, website accessibility and other forms of accessible ICT are necessities—not luxuries or conveniences—that foster independence, economic self-sufficiency and active, meaningful participation in civic life. Although the Department has clearly stated that the ADA applies to such digital spaces, the lack of specific requirements or technical compliance standards incorporated in regulation has led to a widespread lack of meaningful digital accessibility for people with disabilities."[3]

---

[2] Justice Department Issued New Web Accessibility Guidance Under the Americans with Disabilities Act Titled Guidance on Web Accessibility and the ADA (This guidance describes how state and local governments and businesses open to the public can make sure that their websites are accessible to people with disabilities as required by the Americans with Disabilities Act (ADA). *https://beta.ada.gov/web-guidance/* Published March 16, 2022.
[3] "United States Senate Committee on the Judiciary." *United States Senate Committee on the Judiciary*, https://www.judiciary.senate.gov/durbin-duckworth-letter-to-garland-re-accessible-websites. Last accessed, June 22, 2022.

"Nearly every aspect of modern life, particularly in a post-pandemic world, is online in some way – housing, banking, voting, medicine, government and safety resources, groceries, restaurant reservations and delivery, news, commerce, entertainment, and more. As the online world evolves, it is critical that online content also evolves in an inclusive way to ensure that people with disabilities – up to 1 in 4 adults in the United States, according to the CDC (https://www.cdc.gov/ncbddd/disabilityandhealth/infographic-disability-impacts-all.html) – have access to the information, services, and products they need, regardless of any vision, hearing, physical, cognitive, or other impairments."

## JURISDICTION AND VENUE

9.    The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and 28 U.S.C. § 1332.

10.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' claims pursuant to New York State Human Rights Law, N.Y. Exec. Law Article 15 ("NYSHRL"), New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL") and New York State General Business Law § 349 ("GBL").

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants conduct substantial business within this District through their respective commercial websites, which are continuously accessible to consumers residing herein. The digital platforms operated by HON Company, Allsteel Inc., and Design Public Group serve as primary channels for marketing, sales, and customer engagement, thereby establishing ongoing and purposeful availment of this jurisdiction.

12.    Defendant has committed—and continues to commit—the acts and omissions

alleged herein within this District, resulting in injury to Plaintiff and violating the rights guaranteed under Title III of the Americans with Disabilities Act. A substantial part of the conduct giving rise to Plaintiff's claims occurred in this District: on multiple occasions between July 5, 2025, and July 10, 2025, Plaintiff Cesar Lucien, a legally blind resident of the Bronx, attempted to access the websites of HNI Corporation, HON Company, Allsteel Inc., and Design Public Group from his home in New York. These websites contained persistent and particularized accessibility barriers, including unlabeled form fields, missing alternative text, keyboard traps, and inaccessible product configurators. As a result, Plaintiff was denied the full use and enjoyment of Defendants' digital facilities, goods, and services—specifically his efforts to obtain detailed information about office furniture offerings such as desk dimensions, chair configurations, pricing structures, and warranty terms. These barriers have deterred Plaintiff from returning to Defendants' websites and continue to exclude him from meaningful participation in digital commerce until such time as Defendant remediates their respective websites. However, Plaintiff has a clear intent to return once the websites are made accessible, as he remains interested in purchasing the same products and supporting vendors aligned with his nonprofit's mission.

13.    Defendant participates in New York's economic life by clearly performing business over the Internet. Through its interactive Websites, Defendant entered into contracts for the sale of its products and services with residents of New York. These online sales contracts involve, and require, Defendant's knowing and repeated transmission of computer files over the Internet. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U. S. ___(2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products

there); *South Dakota v. Wayfair, Inc.*, 585 U. S. ___(2018); *Godfried v. Ford Motor Co.*, 2021 US Dist. LEXIS 87012 [D Me May 6, 2021, No. 1:19-cv-00372-NT]; *Romero v. 88 Acres Foods, Inc.*, 2022 US Dist. LEXIS 9040 [SDNY Jan. 18, 2022, No. 20-cv-9215 (KMW)]; *Sanchez v. NutCo, Inc.*, 2022 US Dist. LEXIS 51247 [SDNY Mar. 22, 2022, No. 20-cv-10107 (JPO)]; *Panarra v. HTC Corporation* [WDNY April 15, 2022, No. 6:20-cv-6991 (FPG-MWP), DKT. 53].

THE PARTIES

14.     Plaintiff, CESAR LUCIEN, at all relevant times, is a resident of Bronx County, New York.

15.     Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR § 36.*et seq*., the NYSHRL, NYCHRL, and GBL § 349.

16.     Defendant HNI Corporation is, and was at all relevant times herein, a publicly traded corporation incorporated under the laws of the State of Iowa, with its principal executive office located at 600 East Second Street, Muscatine, Iowa 52761. HNI Corporation owns and operates multiple subsidiaries, including HON Company, Allsteel Inc., and Design Public Group, each of which conducts substantial business nationwide through interactive commercial websites. These entities are collectively responsible for the design, maintenance, and operation of the digital platforms at issue in this action.

17.     HNI Corporation exercises centralized control over the digital infrastructure and online operations of its subsidiaries, including HON Company, Allsteel Inc., and Design Public Group. The websites associated with each entity—such as HON.com, DesignPublic.com, and the HNI corporate site itself—share common design elements, accessibility barriers, and technical frameworks, indicating unified management and oversight. These platforms are used collectively

to market, sell, and provide customer service for HNI's furniture offerings, and they operate as a single integrated system for digital commerce. As such, HNI Corporation and its subsidiaries are jointly responsible for ensuring that their websites comply with the accessibility requirements of the ADA and do not exclude blind or visually impaired consumers from full and equal participation.

18.    Defendant **HON Company** is, and was at all relevant times herein, a business entity operating under the ownership and control of HNI Corporation. HON Company maintains and operates the commercial website www.hon.com through which it markets and sells office furniture nationwide, including to consumers within this District. HON Company is responsible for the design, maintenance, and accessibility of its website, which serves as a primary channel for product information, customer engagement, and commercial transactions.

19.    Defendant **Allsteel Inc.** is, and was at all relevant times herein, a business entity operating under the ownership and control of HNI Corporation. Allsteel Inc. maintains and operates the commercial website www.allsteeloffice.com which offers architectural products and workplace furnishings to consumers and businesses nationwide. Allsteel Inc. is responsible for ensuring that its website complies with the accessibility requirements of Title III of the ADA.

20.    Defendant **Design Public Group** is, and was at all relevant times herein, a business entity operating under the ownership and control of HNI Corporation. Design Public Group maintains and operates the commercial website www.designpublicgroup.com which offers residential and commercial furniture and accessories through a national e-commerce platform. Design Public Group is responsible for the accessibility of its website and the digital services it provides to consumers, including those residing in this District.

NATURE OF ACTION

21.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

22.     In today's tech-savvy world, blind and visually-impaired persons have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently utilize in order to access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

23.     Blind and visually-impaired users of Windows-enabled computers and devices have access to a range of screen reading software programs, some of which are commercially available while others can be downloaded and used at no cost. NonVisual Desktop Access ("NVDA") is one of the most widely used free screen-reading programs for Windows, and Plaintiff relies on it daily to navigate websites, access digital content, and engage in online activities. Plaintiff is highly proficient in using NVDA, leveraging its keyboard shortcuts, speech output customization, and real-time navigation features to independently interpret and interact with web-based environments.

---

[5] [M]ultiple district courts in this circuit — including this one — have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store. *See Thorne*, 2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098, at *2; *see also Del-Orden*, 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at *5, 10). *Jaquez v. Dermpoint, Inc.*, 2021 US Dist. LEXIS 96067, at *7-8 [SDNY May 20, 2021, No. 20-cv-7589 (JPO)]; *Panarra v. HTC Corporation* [WDNY April 15, 2022, No. 6:20-cv-6991(FPG-MWP), DKT. 53]; *Fernandez v. Katie May, LLC* [SDNY March 20, 2025, No. 24-CV-1592 (VEC), DKT. 28]; *Fernandez v. Vanilla Chip, LLC* [SDNY April 18, 2025, No. 24-CV-5639 (JLR), DKT. 15].

24.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

25.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies (including the U.S. Dept. of Justice) to ensure their websites are accessible and have been recognized by Courts universally as the proper standard.

26.    Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually-impaired persons include, but are not limited to, the following:

a.    A text equivalent for every non-text element is not provided;

b.    Title frames with text are not provided for identification and navigation;

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sighted persons are not provided;

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

-

STATEMENT OF FACTS

Defendant's Barriers on Its Website

27.    On July 5, 2025, July 10, 2025, and July 18, 2025, Plaintiff Cesar Lucien, a legally blind Bronx resident diagnosed with Stargardt's disease, attempted to purchase ergonomic office furniture from HNI Corporation's subsidiaries—HON, Allsteel, and Design Public—for his nonprofit's home office. His intent was specific and time-bound: to acquire HON's 10500 Series desk and Allsteel's Evo chair by August 2025, in preparation for launching a nonprofit that helps blind individuals obtain vendor licenses in underserved New York City neighborhoods.

28.    Mr. Lucien uses screen reader technology and keyboard navigation. On each website, he encountered distinct, particularized barriers that prevented him from completing his purchases:

### HON Website (hon.com)

- **10500 Series product page** contained multiple images with no `alt` attributes, rendering them invisible to screen readers.
- **"Request a Quote" form** had unlabeled input fields and buttons, making it impossible to submit without guessing field purpose.
- **Keyboard traps** were triggered by modal popups (e.g., "Quickship" dialog), which locked focus and prevented navigation away.
- **No skip navigation links** or semantic landmarks, forcing Mr. Lucien to tab through repetitive headers on every page.
- **Cookie modal overlay** blocked access to content unless all cookies were accepted—an inaccessible interface with no screen reader cues.

### Allsteel Website (allsteeloffice.com)

- **Evo chair product configurator** used dynamic JavaScript rendering that failed to expose dropdowns and buttons to screen readers.
- **Newsletter signup form** lacked ARIA roles and had empty `aria-label` attributes, making it impossible to complete.
- **Color contrast failures** on call-to-action buttons (e.g., "Customize Your Own") made them unreadable to low-vision users.
- **PDF product guides** were untagged and lacked document structure, rendering them inaccessible to JAWS and NVDA.
- **No accessibility statement**, audit disclosures, or contact for reporting barriers.

**Design Public Website (designpublic.com)**

- **Homepage carousel** used auto-advancing slides with no pause or skip controls, disorienting screen reader users.
- **Product images** lacked descriptive alt text, and icons were implemented as background images with no semantic value.
- **Cookie gating** blocked access to product pages unless full consent was given, with no accessible opt-out mechanism.
- **No semantic headings** or ARIA landmarks, forcing Mr. Lucien to navigate linearly through dense visual content.
- **No accessibility coordinator or published roadmap**, despite HNI's public commitments to inclusion.

29.     Mr. Lucien made multiple attempts to access these websites, including returning to HON's site on July 18, 2025, after receiving a recommendation from his rehabilitation counselor. Each time, he was unable to complete his intended purchases due to the barriers described above.

30.     These obstacles are not incidental—they reflect a systemic failure across HNI's digital portfolio. The shared design frameworks, audit obstructions, and absence of accessibility infrastructure demonstrate centralized control and deliberate noncompliance.

31.     HNI Corporation maintains centralized control over the design, development, and deployment of its subsidiaries' digital platforms, including hon.com, allsteeloffice.com, and designpublic.com. These websites share common structural frameworks, accessibility barriers, and technical components—such as cookie gating, unlabeled ARIA roles, and inaccessible modal dialogs—indicating unified oversight and shared infrastructure. HNI's corporate site www.hnicorp.com serves as a gateway to these subsidiaries, reinforcing its role as the architect and steward of the digital ecosystem. As such, HNI Corporation bears direct responsibility for the systemic accessibility failures across its brand portfolio and the exclusion of blind and visually impaired users from full and equal access to its goods and services.

32.     It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered thereby. Due to Defendant's failure and

refusal to remove access barriers to its Website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's numerous goods, services and benefits offered to the public through the Website.

33.     Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. Plaintiff has visited the Website on separate occasions using the NVDA screen-reader.

34.     Mr. Lucien is not a passive user of assistive technology—he is a digitally fluent, self-advocating consumer who relies on NVDA screen-reading software and keyboard navigation to independently access online goods and services. His proficiency enables him to interpret complex page structures, navigate dynamic content, and complete transactions when websites are properly coded for accessibility.

35.     The barriers encountered on HNI's websites were not mere inconveniences—they obstructed Mr. Lucien's ability to furnish his nonprofit's workspace, delaying its launch and undermining his mission to empower other blind New Yorkers. Each failed attempt to engage with HNI's digital platforms imposed emotional strain, logistical setbacks, and a sense of exclusion from mainstream commerce.

36.     HNI Corporation publicly promotes its commitment to innovation, inclusion, and workplace equity. Yet its digital infrastructure lacks basic accessibility features required under WCAG 2.1 and Title III of the ADA. The absence of alt text, semantic structure, keyboard operability, and accessible forms contradicts its stated values and imposes systemic discrimination on blind users.

37.     Mr. Lucien remains deterred from returning to HNI's websites. The barriers he encountered were persistent, technical, and unaddressed—signaling that future attempts would likely result in the same exclusion. However, Plaintiff affirms that he will revisit and attempt to

engage with the websites once they are remediated, as his original purchasing intent remains active

and time-sensitive.

CLASS ACTION ALLEGATIONS

38.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a

nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United

States who have attempted to access Defendant's Website and as a result have been denied access

to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant

statutory period.

39.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a

New York State Sub-Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals

in the State of New York who have attempted to access Defendant's Website and as a result have

been denied access to the equal enjoyment of goods and services offered by Defendant's Website,

during the relevant statutory period.

40.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a

New York City Sub-Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in

the City of New York who have attempted to access Defendant's Website and as a result have been

denied access to the equal enjoyment of goods and services offered by Defendant's Website, during

the relevant statutory period.

41.    Common questions of law and fact exist amongst the Class and Sub-Classes,

including:

42.    Whether Defendant's Website is a "public accommodation" under the ADA;

43.    Whether Defendant's Website is a "place or provider of public accommodation"

under the NYSHRL and NYCHRL;

44.    Whether Defendant's Website denies the full and equal enjoyment of its goods,

-14-

services, facilities, privileges, advantages, or accommodations to visually-impaired persons, violating the ADA;

45.     Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to visually-impaired persons, violating the NYSHRL, NYCHRL, and GBL § 349; and

46.     Whether Defendant's Website and the unequal treatment of visually- impaired persons constitute unlawful discrimination.

47.     Plaintiff's claims are typical of the Class and Sub-Classes. The Class, and Sub-Classes, similarly to Plaintiff, are severely visually-impaired or otherwise blind persons, and claim that Defendant has violated the ADA, NYSHRL, NYCHRL, and GBL § 349, by failing to update or remove access barriers on its Website so it can be independently accessible to the Class and/or the Sub-Classes.

48.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, including ADA litigation and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

49.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions are common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of their litigation.

50.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by visually-impaired persons throughout the United States.

**FIRST CAUSE OF ACTION**
**Violation of Title III of the Americans with Disabilities Act**
(42 U.S.C. § 12181 et seq.)

51.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52.     Defendant HNI Corporation is a private entity that owns, operates, and controls places of public accommodation within the meaning of Title III of the ADA, including its commercial websites hon.com, allsteeloffice.com, and designpublic.com, which offer goods and services to the general public.

53.     Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

54.     Defendant has violated Title III by maintaining websites that contain digital barriers which deny blind and visually-impaired individuals, including Plaintiff, full and equal access to its goods and services. These barriers include, but are not limited to, unlabeled form fields, missing alt text, inaccessible modal dialogs, keyboard traps, and the absence of semantic structure required for screen reader navigation.

55.     Defendant's failure to design, construct, maintain, and operate its websites in a manner that is accessible to blind individuals constitutes a denial of effective communication and reasonable modification, in violation of 28 C.F.R. §§ 36.303 and 36.302.

56.     Plaintiff has made multiple attempts to access Defendant's websites using NVDA screen-reading software and keyboard navigation. Despite his proficiency, he was repeatedly deterred and ultimately excluded from completing his intended transactions due to Defendant's discriminatory digital infrastructure.

57.     Defendant's discriminatory conduct is ongoing and systemic. Plaintiff remains deterred from returning to the websites, and unless enjoined, Defendant will continue to deny blind users equal access to its digital platforms. Plaintiff intends to return to the websites once they are brought into compliance, as he continues to seek the goods and services originally pursued.

### SECOND CAUSE OF ACTION
### Violation of the New York State Human Rights Law
### (N.Y. Exec. Law § 296)

58.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     Defendant's websites constitute places of public accommodation under the New York State Human Rights Law ("NYSHRL"), which prohibits discrimination against individuals with disabilities in the provision of goods, services, and facilities.

60.     By designing, maintaining, and operating websites that are inaccessible to blind and visually-impaired individuals, Defendant has denied Plaintiff the opportunity to participate in and benefit from its goods and services on equal terms, in violation of N.Y. Exec. Law § 296(2)(a).

61.     Defendant's failure to provide accessible digital interfaces constitutes a form of unlawful discrimination and exclusion and reflects a broader pattern of neglect toward the rights of disabled New Yorkers.

62.     Plaintiff has suffered harm, including emotional distress, frustration, and deterrence, as a direct result of Defendant's discriminatory conduct. Plaintiff has been discriminated against by Defendant's conduct and violations of the statues and regulations set forth

herein by being treated unequally from sighted persons due Plaintiff's disability and Plaintiff has

suffered and continues to suffer injury as a result of Defendant's discriminatory practices.

### THIRD CAUSE OF ACTION
### Violation of the New York Civil Rights Law
(N.Y. Civ. Rights Law §§ 40 and 41)

63.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though

fully set forth herein.

64.    Under the New York Civil Rights Law, individuals with disabilities are entitled to

full and equal access to all accommodations and facilities of any place of public accommodation.

65.    Defendant's websites are public-facing commercial platforms that serve as digital

extensions of its physical business operations. By denying Plaintiff equal access to these websites,

Defendant has violated his civil rights under N.Y. Civ. Rights Law §§ 40 and 41.

66.    Pursuant to § 41, Plaintiff is entitled to statutory damages of not less than $500 for

each instance of discrimination, as well as costs and reasonable attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's websites are in violation of Title III of the ADA, the New York State Human Rights Law, and the New York Civil Rights Law;

B. Issue a permanent injunction requiring Defendant to remediate its websites to conform to the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA, and to maintain accessibility on an ongoing basis;

C. Order Defendant to implement a digital accessibility policy, appoint a qualified accessibility coordinator, and conduct regular third-party audits;

D. Award Plaintiff compensatory damages, including emotional distress and deterrence-based harm;

E. Award Plaintiff statutory damages pursuant to N.Y. Civ. Rights Law § 41;

F. Award Plaintiff reasonable attorneys' fees, costs, and expenses incurred in bringing this action;

G. Grant such other and further relief as the Court deems just and proper.


### **DEMAND FOR TRI§AL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.

Dated: New York, New York
      August 14, 2025


                      **JOSEPH & NORINSBERG, LLC**

                      Michael A. James, Esq.
                      Joseph & Norinsberg, LLC
                      825 Third Ave., Suite 2100
                      New York, New York 10003
                      Tel: 212.227.5700
                      Fax: 212.656.1889
                      MJames@employeejustice.com
                      *Attorneys for Plaintiffs*